# CASES DETERMINED

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW-JERSEY,

AT JULY TERM, 1851.

---

## SMITH v. THE STATE.

1. If, in the course of a trial, witnesses testify to a particular state of facts, it is no error in the court, in the charge, to say that those facts are proved, and that *if the jury believed* these witnesses, the legal right was established by it.

2. If the actual corner made by the intersection of two streets has been treated and considered by the owner of a lot at the corner as the boundary of the lot, and has been the corner called for in the previous conveyances, a deed by such owner calling for " the corner" of the two streets generally as its beginning point, will begin at such actual corner, and not at a corner which may be found to be the corner made by an accurate plotting of the surveys laying out the streets.

3. If a street has been used and built up along a particular line, and the adjoining owners have acquiesced in the line so built upon, and treated it as the true line of the street for forty or fifty years, they cannot be permitted to change or correct the course of the street by showing that the surveys laying it out give it a different direction.

4. The use of land by the public *as a highway or street* for more than twenty years, and the acquiescence of the owner in *such* use, is conclusive proof of dedication.

5. The practical location of boundaries upon which others have been induced to act shall conclude those who adopt such location, even if erroneous.

6. A strip of land adjoining a public highway, regularly laid out, may become dedicated by acquiescence in the use of it, as a part of the highway by the public.

130

Smith v. The State.

Error to Passaic Oyer and Terminer.

The defendant below was indicted for a nuisance in obstructing a public highway in the town of Paterson by a building, the front walls of which, as alleged, were erected upon the street. The indictment charges, that on 1st July, 1849, and for a long time before, there was, and still of right ought to be, a common and public highway, leading from Main street, eastwardly, to Straight street, in the town of Paterson, for the inhabitants of this state, on foot and with their horses and carriages, to pass and repass at their free will and pleasure ; and that on the said day J. S., the defendant, unlawfully dug up a part of said street, and erected upon it the walls of a building ; and the walls so erected the defendant still maintains and continues, whereby the said street is obstructed and narrowed, so that the citizens of the said state cannot pass and repass, as they ought and were accustomed to do, &c.

The defendant was tried and convicted in the Passaic Oyer and Terminer, before the Chief Justice, at its June sessions 1849. Exceptions were sealed to the charge of the court to the jury, and the judgment of the Oyer and Terminer was removed by writ of error.

The charge was as follows :

" The issue which you are sworn to try involves two questions, viz." 1st. Is there a common public highway, as charged in the indictment ? 2d. Has the defendant, by his building, which it is admitted he erected, narrowed or obstructed that highway ?

A public highway in New Jersey may be established (as the counsel of both parties agree) either—1st. By the act of surveyors of the highways in laying out the road according to the statute. 2d. By the uninterrupted use and enjoyment of the road as a highway by the public for a period not less than twenty years. 3d. By the dedication of the land by the owner to the use of the public as a highway. In the present case the state relies upon dedication by the owner, and a long uninterrupted use by the public, as proof of the existence of a highway at the place in question.

The oldest witness speaks of a post and rail fence on the

south side of Broadway, which formerly crossed where Main street now is, before that street was opened.  This was followed by a paling or picket fence, which extended from the corner of Main street, and joined up to the Berry house.  There was another fence, which extended from the Berry house, further east, to the Mitchell house.  At a later period, Garrabrant Van Houten moved a barn on the corner of Main street and Broadway, and connected it with a store.  The building was placed, as the witnesses testify, on a line with where the paling fence formerly stood, the porch or steps projecting beyond the line into the street.  In 1821 Parsons bought the corner, and from that time it is undenied and very clearly proved that the fences and lines have remained unchanged until the defendant erected his building.  I do not particularize the evidence, but, so far as I recollect, all the witnesses agree that there has been no material change in the south side of Broadway, from St. John's Hall to the corner of Main street, within the memory of the witnesses, within which lines the defendant's building is erected.

It is further said, on behalf of the defendant, that the mere fact that an owner of land chooses to leave it unfenced, does not divest him of his property or give a right of way to the public.  It is certainly true that a landholder may leave his land adjoining a highway unenclosed and open to the public.  He may permit the public to use it, for the purpose of passing and repassing, and yet vest no right in the public.  It is said, again, that the mere fact that a man opens the street up to his house, if he leaves his porch or cellar door extending into the street, it protects his right.  This is undoubtedly true, if there be in fact no dedication of the land to the use of the public.  As a general rule, the right of the public, where it is a question of dedication, may not extend beyond their actual enjoyment, nor, on the other hand, will having a porch, or steps, or area, within the limits of the street deprive the public of their right or restrict the limits of the highway.  The use by the public of private property, or the appropriation of a public street to individual use, for the necessary purposes of steps or porches, may be permissive merely without conferring any right.

This brings us to the question, whether in fact this land was used by the public with the assent of the owners, and with a recognition, on their part, of the right of the public to the use of the road in the place where the defendant's building is erected.

It appears in evidence that, on the 1st of May, 1807, Peter Wilson conveyed the corner lot, 100 feet on Main street and 50 feet deep, bounding north on Broadway and south on Van Houten's land, to Simeon Van Houten. On the 6th of May, 1820, Peter Van Houten and wife conveyed to Garrabrant Van Houten, describing the lot as 100 feet on Main street and 50 feet deep. Garrabrant Van Houten erected the store house on the corner where the picket fence formerly stood. This must have been done in the year 1820, as on the 5th of March, 1821, he conveyed to Parsons.

A strong confirmation of the fact, that the position of the south line of Broadway has not been changed, is found in the condition of the lots lying east of the defendant's lot, and extending 100 feet on Broadway to St. John's Hall, or the Society's line. These lots are bounded on the north by Broadway, and extend back 100 feet in depth; they were laid out, mapped, numbered, and sold by Abraham Van Houten. Those lots, on measurement, are now found to be 100 feet deep.

In 1821, Garrabrant Van Houten conveyed to Andrew Parsons the corner lot, 100 feet on Main street, also the Simeon Van Houten lot, extending 55 feet on Main street.

In 1820, Parson bought of Winans a lot of 40 feet front on Main street, beginning at 155 feet from the corner of Main street and Broadway. This lot adjoined the land he afterwards purchased of Van Houten on the south, and made his entire front on Main street, extending south from the corner of Broadway, 195 feet.

Parson held the entire lot from 5th March, 1821, till the 14th December, 1835, a period of more than fourteen years. He bought his entire front for 195 feet. This is the measurement called for in his deeds. He held that quantity. That, according to his own testimony, was all he claimed or occupied. He measured it repeatedly. Beyond the 195 feet was the street.

Smith v. The State.

He never claimed where the street was open and used by the public.

On the 14th December, 1835, Parsons conveyed by deed to Aaron S. Pennington and four others for $25,500. This deed describes the land thus: "Beginning on the eastwardly of the Paterson and Hamburg turnpike, at the southeast corner of its intersection with Broadway, or the old York road, then running south, along the turnpike, 195 feet, to the line of Van Blarcom."

Parsons sold for a high price, every foot of the land on Main street being of great value. The description in his deed to Pennington and others manifestly calls for the corner of the street, as it actually was at that time. He testifies that he held, and sold only to that corner. It is obvious, moreover, that the whole plot will be deranged by shifting that corner to the point where the defendant now seeks to fix it.

From the 14th of December, 1835, Pennington and his associates held it until the 5th of May, 1849, when a part of the lot, including the spot where the defendant's building now stands, was conveyed to the defendant. Mr. Pennington testifies, that while he and his associates held, a period of more than thirteen years, they never changed the lines of the lot or enlarged the possession, as they received it from Parsons. The ownership and possession of Parsons and Pennington, the previous owners of this land, and from whom the defendant derives his title, extends from 1821 to 1849, a period of more than twenty-eight years. Mr. Pennington testifies that he had the entire length of line upon Main street called for in his deed, and a foot over, within the bounds of the lot, as he held it. At the rate that Pennington and his associates sold to the defendant (20 feet 8 inches for $4450, or about $215 per foot,) the 4 feet 4 inches now occupied by the defendant's building beyond the line, as conveyed to him, would amount to more than $980. This lot, before it was conveyed to the defendant, was owned for many years by intelligent business men, who knew Paterson well; and it is remarkable that, notwithstanding the high price at which they sold the land, they did not attempt to sell or convey to the defendant beyond the line they actually

occupied.  This fact shows unequivocally that they did not claim more.  It shows, moreover, that the street, beyond the line to which they occupied, was used by the public with their knowledge and assent.  If there were no evidence in the cause previous to the year 1821, when Parsons acquired title, it is nevertheless shown that the public have used the lands where the defendant's building is erected, with the assent of the owners, for more than twenty-five years.  If you believe the witnesses, this evidence establishes the public right.

If this be so, it is not material where the road was originally laid out, or whether the lines of the street, as occupied, correspond with the lines of the original survey, or whether the road was ever laid out by surveyors of the highways.  The public have acquired by use a right to the road, as good as if the street had been originally laid out where it now is according to law.

This view of the case renders it unnecessary to advert particularly to the evidence adduced before you to show where the true lines of the street would be, if laid out strictly in accordance with the original survey.

The act of the township officers in not working the road, and of the surveyors of the highways and of the counsel of the township in not correcting the error, (if it actually exists) cannot relieve the defendant from liability.  A public common right is involved.  The right of the people to a public highway cannot be lost by a mistake of the agents or servants, or by their misapprehension of the right of the public.  On this account I have felt it my duty to state my views of the law clearly and unequivocally, that there may be no misapprehension on this point by the jury.  If I am in error, there is a mode of redress of which the defendant may avail itself.  I have been the more explicit because it has been stated, in your hearing by counsel, that the defendant acted under an impression, prevalent in Paterson, that if he built on the line of the street as originally laid out he was safe in so doing.  This impression, if it really exists, is in my judgment a dangerous error.  No man is justified in depriving the people of a common right of stopping or obstructing an ancient highway, though never laid out

agreeably to law. If he build within the line of the street, as it actually exists, he acts at his peril, and if he thereby creates a nuisance, it may and ought to be abated, either by the act of the parties specially aggrieved or by force of law.

If you find, upon the evidence in this cause, that the defendant's house is located within the bounds of a public street, actually opened and used by the people as a highway for more than twenty years, and especially if you find that the street has been so used with the knowledge and assent of the owners of the land now occupied by the defendant, and under whom the defendant claims, the building erected by the defendant is a nuisance, and your verdict should be guilty."

The defendant, by his counsel, excepted to the aforesaid charge of the court—

1st. Because the jury were therein expressly told, and a large part of said charge assumed it as an established fact, that the land in controversy had been dedicated by the owners to public use, and used by the public as a public highway for a sufficient length of time to establish the same in law, whereas the question of such dedication and use are properly questions for the jury, and should have been left open for their decision.

2d. Because, by said charge, the court instructed the jury that the description in Parsons' "deed to Pennington and others manifestly called for the corner of the street, as it actually was at that time."

3d. Because, by said charge, the jury were instructed that it was "not material where the road was originally laid out, or whether the lines of the street, as occupied, correspond with the lines of the original survey, or whether the road was ever laid out by surveyors of the highways."

4th. Because the court, by their said charge, instructed the jury that the act of the township officers, in not working the road, and of the overseer of the highways and the counsel of the township, in not correcting the error (if any actually existed), cannot relieve the defendant from liability.

For the foregoing reasons, the defendant, by his counsel, prays a bill of exceptions to the said charge, which is allowed and sealed accordingly.

The cause was argued, on error, by *F. T. Frelinghuysen* and *Vroom*, for plaintiff in error, and by *A. O. Zabriskie*, for the state, before the CHIEF JUSTICE and Justices NEVIUS and CARPENTER.

CARPENTER, J. The defendant below, who is the plaintiff in error, was convicted in the Passaic Oyer and Terminer of a nuisance for obstructing a public highway, being one of the streets in the town of Paterson. Having, in 1849, become by purchase the owner of a lot of ground at the southeast corner of Broadway and Main streets, fifty feet on Broadway by twenty-eight feet on Main street, he erected a building, which it is alleged projects four feet four inches beyond the line of the street first named.

The lot in question is part of a larger lot of ground, fifty feet on Broadway by one hundred feet in depth on Main street, which, with other lots on Broadway of corresponding depth, was laid off and sold by one Abraham Van Houten. The larger lot spoken of was conveyed, May 1, 1807, by Peter Wilson, then the owner, to one Simeon Van Houten. It subsequently became the property of one Garrabrant Van Houten, who, March 5, 1821, conveyed it, together with a lot of fifty-five feet front on Main street immediately adjoining, to Andrew Parsons. Parsons had previously bought a lot of forty feet front on Main street, immediately south of the last mentioned lot, so that his whole front on Main street, running south from the corner of Broadway, was 195 feet. He held to this extent from 1821 until December 14, 1835, a period of more than fourteen years, when he sold the whole premises, comprising the three lots aforesaid, for a large price, to Messrs. Pennington, Collet, and others. This property was subsequently divided and sold, the defendant becoming the owner of the corner lot already mentioned.

Broadway, formerly called the old York road, upon which the encroachment was made, had been laid out as a public highway, four rods or sixty-six feet in width, in the mode then provided by statute, as long ago as 1761 ; but there seems to have been some doubt where the true line of the street

Smith v. The State.

should be placed according to the original survey. It appeared, however in evidence, that many years ago, more than forty, according to the testimony, a fence stood on the south side of Broadway, where it is now crossed by Main street, which extended a considerable distance eastwardly, in front of and beyond the lot now owned by the defendant. Buildings were subsequently placed on the street in the line of that fence, which was for many years, and until the action of the defendant, treated as the line of the street. Indeed the street was built up in conformity with the line so indicated, and many conveyances by the owners of the adjoining lands were made accordingly. The measurements called for in the deeds referred to, and made by successive owners, were all satisfied by running to the corner of Broadway and Main street, indicated by the fence, and subsequently by the buildings placed in conformity with the same line.

The defendant in this indictment having purchased the lot at the corner of Broadway and Main street, caused the former street to be surveyed. Assuming certain points to be monuments from which the true line of the street, as originally laid out, could be ascertained, and claiming it to be in a straight line, he carried forward the front of his lot from what had been previously treated as the line of the street, and which was sufficient to satisfy the measurement of his own deed, to a point four feet four inches in advance, and erected a brick building accordingly. The present indictment was the result of this encroachment.

Upon the trial, the court charged that a public highway in New Jersey might be established, not only by surveyors under the statute, but by dedication, and by an uninterrupted use by the public for more than twenty years. It was submitted to the jury, supposing the encroachment not to be within the original line of the street according to the survey, whether in this case there had not been such use for a long period, with a recognition on the part of the owners of the adjoining land, as would establish the public right. After a recapitulation of the evidence on this point, the court added, that it was shown that the public had used the land where the defendant's build-

ing is erected, with the assent of the owners, for more than twenty years, and that, if the witnesses were believed, this established the public right. One of the exceptions to the charge is, that the judge assumed the dedication as a matter of fact.

The opinion of the court upon the weight of evidence, declared incidentally in the course of a charge to the jury, is not strictly the subject of an assignment of error. But whatever may be the rule on this point, which it is not intended to discuss, certainly such remarks can furnish no ground of error where no mistake is made to appear, the charge being supported by the evidence detailed in the bill of exceptions and the directions have led to a proper result. Whether there was any error in the view expressed by the court in the charge on this point, will be better understood after considering the subsequent exceptions taken on the part of the defendant. I think it will be found that the court, in what it actually did say, made no attempt to decide any questionable matter of fact. The court expressed merely the conclusions of the law upon facts proved, and in this it in no way interfered with the province of the jury.

The second exception upon which error has been assigned, is the construction of the deed from Parsons to Pennington and his associates. Parsons held the entire lot, being 195 feet on Main street, from March 5, 1821, to December 14, 1835, when he made the deed referred to. He bought of Van Houten 155 feet on Main street, which, added to 40 before purchased of Winans, made in the whole 195 feet on that street, from the corner of Broadway, as already stated. The court said, "he bought his entire front for 195 feet. This is the measurement called for in his deeds. He held that quantity. That, according to his own testimony, was all he claimed or occupied. He measured it repeatedly. Beyond the 195 feet was the street. He never claimed where the street was open and used by the public. On the 14th December, 1835, he conveyed to Pennington and four others for $25,500. The deed describes the land thus: 'Beginning on the easterly side of the Paterson and Hamburg turnpike, at the southeast corner of its

intersection with Broadway or the old York road, then running south along the turnpike 195 feet to the line of Van Blarcom.'"
" Parsons " (said the court) " sold for a high price every foot of the land on Main street, it being of great value. The description in his deed to Pennington and others manifestly calls for the course of the street *as it actually was at the time.* He testifies that he only held to that corner."

This instruction was correct. It cannot be doubted, upon the evidence in the case, that the measurement given in the description referred to in the charge was made in reference to the corner as it then actually existed at the time of giving the deed, which had always been treated as the line of Broadway, rather than to an imaginary corner, not then known but supposed to be discovered by the subsequent surveying done under the instructions of the defendant. Wherever the line of the original survey may have been, the corner called for in the deed was in that line which had been located by the adjoining landholders at a point reached by 195 feet from the corner of the lot on Main street, and by 100 feet from the rear of the lots laid off and sold by Abraham Van Houten. Parsons, called as a witness, said he had always understood that point to be the line of the street, and had treated it accordingly. Mr. Pennington testified to the same effect. It cannot be doubted that the proper construction was given to the language of the deed, and it is made clear by the testimony referred to. In a matter of location, when the language of a deed is doubtful, parol evidence of the acts and admissions of the parties is always admissible to show the practical construction given by them, and which will frequently conclude their rights. *Den* d. *Haring* v. *Van Houten,* 2 *Zab.* 68.

The third exception to the charge is, that the court instructed the jury that it was not material where the road was originally laid out, or whether the lines of the street, as occupied, correspond with the lines of the original survey, or whether the road was ever laid out by the surveyors of the highway. The fourth and last exception, which may properly be considered in the same connection, as stated by the defendant in his exception, is, that the court instructed the jury that the acts of the town-

ship officers in not working the road, and of the overseer of the highways, and of the counsel of the township in not correcting the error (if any actually existed), could not relieve the defendant from liability.

The remarks of the court, to which these exceptions are directed, must of course be considered in connection with the evidence and with the context of the charge itself, and not as mere isolated legal propositions applicable to all cases and under all circumstances. If, as admitted, or at any rate proved, the lines of the survey of the road, which had been made nearly a century before, were doubtful and not easily to be ascertained, and the street had been located, and at length actually built up, according to lines adopted or acquiesced in by the successive owners of the adjoining land, and so used by the public for many years, undoubtedly, under such circumstances, the precise location of the survey, as it originally ran, became immaterial. It ought not to be permitted to correct an error, even if one has been fallen into, after forty or fifty years of acquiescence on the part of those interested, and, under such pretence, to encroach several feet upon the street, as it actually exists. Such variance might probably be found in some of the streets of most of our towns, and, if upon resort to the old surveys such course could be sustained, it would produce inextricable difficulty and confusion.

It is said, on the part of the defendant, in the indictment, that in regard to the location of boundaries, fixed monuments are to govern, and that mere course and distance must conform ; that the successive conveyances under which he claims, including the deed to himself, call for the line of Broadway, to which his lot must extend, even if more than the distance called for from the corner on Main street. Undoubtedly his lot extends to Broadway, but the dispute is not whether it shall extend to that street or otherwise, but what in this controversy must be considered the line of the street. Is it to be that line which has been adopted by the adjoining landholders and acquiesced in by a succession of owners, including those under whom the defendant claims for more than half a century, or that line which might be ascertained by a recur-

rence to the old survey, to be run and corrected by the aid of the greater skill and the better instruments of the present day? In my judgment, it will never do thus to tamper with the rights which have grown up for such a length of time by the acts and under the consent of those interested and the acquiescence of the public. The case was properly put before the jury on the ground of dedication, which may be conclusively presumed after an uninterrupted use by the public of the ground on which the defendant has placed his building for so long a period with the acquiescence of all concerned. But it might well be put upon the ground sanctioned by this court in the case of *Den* v. *Van Houten* (2 *Zab.* 62), that the practical location of boundaries, upon which others have been induced to act and rights have grown up, shall conclude those by whom adopted, even if erroneous: it will not be permitted to change such location to the injury of others or of the public. Under these circumstances, it became, as was properly said, immaterial where the road was originally laid, or whether the lines of the street, as occupied, correspond with the lines of the original survey. That must be considered as the street which has been so used and occupied by the public for the long period referred to.

It is not necessary here to enter upon the doctrine of dedication. It has however been argued, on the part of the defendant, that it cannot apply to a street laid out under a regular survey, where it is said the right must rest, not on the presumption arising out of user, but on the authority derived from the statute and defined by the survey. That dedication implies consent, but that a use under the statute rests upon compulsion. It has, however, been held that a highway laid out in the mode prescribed by statute may be widened by dedication. It was so held upon sound reason in the case of *Valentine* v. *City of Boston*, 22 *Pick.* 75, 79. Whatever attention, therefore, the suggestion may deserve in relation to the weight of evidence in a matter of dedication, it cannot be adopted as a principle of law.

What has been said on these exceptions really covers the whole case. It is sufficient to say, as to the last exception,

which applies to the remarks in regard to the neglect of the town officers, that they were based upon the assumption that sufficient had been shown to establish the rights of the public, arising out of long continued and uninterrupted user. If the court below was correct in the assumption, unquestionably that right would not be lost by the mere neglect of the town officers in not working the road. The evidence, however, scarcely warrants what is implied by the exception, to wit, that the street was not worked to the line in question. Whatever may have been the case as to others, one town officer, who was called as a witness, did testify that he worked the street to that extent.

I am of the opinion that the judgment of the Oyer and Terminer should be affirmed.

The CHIEF JUSTICE and Justice NEVIUS concurred.

Judgment affirmed.

AFFIRMED, 3 *Zab.* 712. CITED *in Donnelly* v. *State,* 2 *Dutch.* 471; *Wood* v. *Hurd,* 5 *Vr.* 90; *Atty. Genl.* v. *Heishon,* 3 *C. E. Gr.* 410; *Atty. Genl.* v. *M. & E. R. R. Co.,* 4 *C. E. Gr.* 391; *DeVeney* v. *Gallagher,* 5 *C. E. Gr.* 38.